**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Case No. 2:08cr00011 |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | By: Pamela Meade Sargent |
| **KEVIN EVANS,** | ) | United States Magistrate Judge |
| Defendant | ) | |

This matter is before the court on the motion of the Government to allow the forcible medication of the defendant, Kevin Evans, ("Evans"), in an attempt to restore him to competency to stand to answer a Petition, alleging that he has violated the terms and conditions of a period of supervised release. Based on the reasoning set forth below, the court finds that the Government has an important interest in prosecuting the defendant for a violation of his conditions of supervised release. Based on this finding, the court will schedule an evidentiary hearing to determine if the motion for forcible medication should be granted pursuant to *Sell v. United States*, 539 U.S. 166 (2003). The court also will order Bureau of Prisons' personnel to provide an addendum to their recent report, setting forth their prescribed treatment plan to restore the defendant to competency.

*I.*

On July 23, 2008, Evans was charged in a three-count Indictment with knowingly and intentionally assaulting another inmate at the United State Penitentiary Lee, ("USP Lee"), with intent to commit murder, in violation of 18

U.S.C. § 113(a)(1), knowingly and intentionally assaulting another inmate at USP Lee, with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. § 113(a)(3), and knowingly and intentionally assaulting another inmate at USP Lee resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6). Evans initially appeared before the court on August 5, 2008. At this appearance, defense counsel requested that Evans be detained for a psychiatric or psychological evaluation to determine if he was competent to stand trial. The court granted the motion, and Evans was detained and transported to Metropolitan Correctional Center, ("Metropolitan"), New York, N.Y., for this evaluation. By report dated October 28, 2008, (Docket Item No. 21), Elissa R. Miller, Psy.D., and William J. Ryan, Ph.D., stated that Evans suffered from disorganized schizophrenia and a learning disorder, but, in their opinion, he was competent to stand trial. The report reflected that, while Evans was held at Metropolitan, a psychiatrist diagnosed him as suffering from a mood disorder and prescribed Abilify beginning September 25, 2008.

Upon Evans's return to the Western District of Virginia, defense counsel made, and the court granted, a motion for Robert Spangler, Ed.D., to evaluate Evans for competency. By report dated January 15, 2009, (Docket Item No. 28), Spangler diagnosed Evans with bipolar disorder and schizophrenia, disorganized type. Spangler opined that Evans was not competent to stand trial. The court conducted a competency hearing on February 12, 2009. Based on the conflicting expert evidence, the court, by Order entered on February 13, 2009, (Docket Item No. 31), ordered that Evans be held to submit to further psychiatric or psychological evaluation to determine competency. Evans, again, was transported to Metropolitan for evaluation.

By report dated March 18, 2009, (Docket Item No. 41), Miller and Ryan, again, found that Evans suffered from disorganized schizophrenia and a learning disorder. This time, however, they opined that Evans was not competent to stand trial. While Evans was housed at Metropolitan, a psychiatrist diagnosed Evans as suffering from psychosis, not otherwise specified, and prescribed Zyprexa for Evans starting on February 27, 2009. By Order entered April 6, 2009, (Docket Item No. 45), the court committed Evans to the custody of the Attorney General for treatment in an effort to restore him to competency. Evans was transported to the Federal Medical Center in Butner, N.C., ("Butner").

Subsequently, a certificate of restoration of competency was filed with the court on September 15, 2009, (Docket Item No. 48), along with a report dated August 27, 2009, (Docket Item No. 49), from Jill R. Grant, Psy.D., Dr. Joseph Williams, M.D., and Dr. Bruce Berger, M.D. According to the report, these mental health experts diagnosed Evans as suffering from schizophrenia, undifferentiated type, and an antisocial personality disorder. While being held at Butner, Evans was prescribed olanzapine, aripiprazole and propranolol. In their August 27, 2009, report, Grant, Williams and Berger stated that Evans had been restored to competency, but they stated that Evans's competency was contingent upon his medication compliance and that he would likely decompensate without medication. They stated that Evans was not an imminent risk of harm to self or others, while medicated.

Upon Evans's return to the Western District of Virginia, the court conducted a competency hearing. By Order dated September 23, 2009, (Docket Item No. 53), the

court found Evans competent to stand trial. On October 14, 2009, Evans appeared before the court and, pursuant to a Plea Agreement, pleaded guilty to Count Two of the Indictment, charging him with assault with a dangerous weapon with intent to do bodily harm. The remaining counts contained in the Indictment were dismissed. On January 5, 2010, Evans was sentenced to a 120-month term of imprisonment, to be followed by a three-year term of supervised release.

On September 18, 2017, a warrant was issued for Evans's arrest based on a Petition for Warrant or Summons for Offender Under Supervision filed earlier that day with the court. (Docket Item No. 66.) The Petition alleged that Evans had been released from Bureau of Prisons' custody on September 1, 2017, and had failed to report to the probation office within 72 hours of his release as required by his conditions of supervised release. The Petition alleged that Evans's location was unknown.

On October 13, 2017, Evans was arrested in Washington, D.C. Evans was detained and transported to the Western District of Virginia, where he appeared before the court on November 3, 2017. On November 8, 2017, defense counsel moved for a psychological or psychiatric evaluation to determine whether Evans was competent to defend the allegations of violation of his supervised release. By Order entered November 13, 2017, (Docket Item No. 84), the court granted the motion and ordered that Evans undergo another evaluation to determine competency. Evans, again, was transported to Metropolitan, where he was evaluated by Miller and Samantha E. DiMisa, Ph.D. By report dated February 26, 2018, (Docket Item No. 89), Miller and DiMisa found that Evans suffered from acute schizophrenia and an antisocial personality disorder. They opined that he was

not competent to stand trial.

By Order entered February 28, 2018, (Docket Item No. 92), the court committed Evans to the custody of the Attorney General to be treated in an effort to restore him to competency. Evans was transported to Butner for evaluation and treatment. By report dated June 26, 2018, (Docket Item No. 96), Robert Cochrane, Psy.D., stated that Evans remained not competent. Cochran diagnosed Evans as suffering from schizophrenia, antisocial personality disorder and a need to rule out substance use disorders. Cochran wrote that Evans had experienced delusions and disorganized speech and behavior. Cochran stated that Evans's conditions had demonstrated improvement in symptoms with medications in the past. In fact, Cochran opined that there was a "substantial probability" that Evans could be restored to competency with the use of antipsychotic medications. He noted, however, that Evans had refused all psychotropic medication during this treatment period. Cochran stated that, without medication, Evans was likely to continue to experience psychotic symptoms. Cochran also stated that, despite his psychotic symptoms, Evans was not gravely disabled and did not pose a substantial risk of dangerousness to himself or others while incarcerated.

Counsel and Evans appeared before the court on August 13, 2018, for a hearing on the Government's motion to order that Evans be forcibly medicated to be restored to competency. At this hearing, counsel for the Government and defendant agreed that Evans's criminal history category under the Sentencing Guidelines was a Category V, and, if found guilty of a Grade C violation, Evans's guidelines range for sentencing would be 7-13 months with a statutory maximum sentence of up to 24 months' imprisonment. (Defense Exhibit No. 2; Docket Item No. 108-3.) The

Government submitted Evans's Presentence Report as Government's Exhibit No. 1, which was filed with the court under seal. Counsel requested that the court first determine if the Government had demonstrated an important governmental interest in prosecuting Evans for a violation of supervised release before scheduling the matter for an evidentiary hearing as to the other relevant issues.

## II.

The United States Supreme Court in *Sell v. United States*, 539 U.S. 166, 180 (2003), held that a defendant who has been found incompetent to stand trial may be involuntarily medicated in an effort to restore competency only in "rare" circumstances. The Court in *Sell* recognized that it previously had held that a defendant has a constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs. *See* 539 U.S. at 178-79 (citing *Riggins v. Nevada*, 504 U.S. 127, 134, 135 (1992)). The Court noted that only an "essential" or "overriding" state interest could overcome this liberty interest. *Sell,* 539 U.S. at 178-79 (quoting *Riggins*, 504 U.S. at 134.) The Court held that "the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Sell,* 539 U.S. at 179.

The Court in *Sell* set out four factors that must be established before a court can order that a defendant be involuntarily medicated to restore competency. *See* 539 U.S. at 180-81. First, the court must find that *important* governmental interests are at stake. *See Sell,* 539 U.S. at 180. Second, the court must find that involuntary medication will *significantly further* those important governmental interests, in that the medication must be substantially likely to render the defendant competent and must be substantially unlikely to cause side effects that will interfere significantly with the defendant's ability to assist in his trial defense. *See Sell,* 539 U.S. at 181. Third, the court must find that involuntary medication is *necessary* to further those governmental interests in that alternative, less intrusive treatments are unlikely to restore competency. *See Sell,* 539 U.S. at 181. Fourth, the court must find that the administration of the medication is medically appropriate. *See Sell,* 539 U.S. at 181. The Court in *Sell* also held that before considering whether the Government should be allowed to involuntarily medicate a defendant to restore competency, the court should consider whether involuntary medication was warranted for another purpose, such as when the defendant poses a danger to himself or others or when medication is necessary to treat a defendant who is gravely ill. *See Sell,* 539 U.S. at 181-82.

In this case, the Government's own expert opined that Evans did not pose a danger to himself or others while incarcerated and was not considered gravely ill. Therefore, I find that, at this time, no other grounds exist to support the involuntary medication of Evans other than for the sole purpose of establishing competency. That being the case, I must analyze the facts and circumstances of this case to determine whether each of the four factors set forth in *Sell* has been established. The parties have requested that, before the court sets an evidentiary hearing to

allow the psychological and psychiatric experts to provide evidence on the medical issues raised by the *Sell* factors, the court decide whether the forced medication of Evans to restore competency would serve an important governmental interest.

The Court in *Sell* recognized that the "Government's interest in bringing to trial an individual accused of a *serious* crime is important... whether the offense is a serious crime against the person or a serious crime against property." 539 U.S. at 180 (emphasis added). The Court in *Sell* did not, however, offer any definition or explanation of what it considered to be a "serious" crime. Here, the issue to be considered is whether the Government's interest in prosecuting a convicted felon for alleged violations of his conditions of supervised release is sufficiently important to justify the forced medication of the defendant to restore him to competency.

The several district courts that have considered the issue appear to have based their decisions on the specific facts of the case before them. In *United States v. Baugh*, 776 F. Supp. 2d 172, 177 (E.D. Va. 2011), the court wrote: "The government, in proceeding against defendants who violate the terms of their supervised release, fulfills a number of important functions, not the least of which is protecting the public from individuals who, despite already having been convicted of a crime or crimes, continue to flout the law or the terms of a lawfully imposed sentence, or both."

In *United States v. Rodriguez*, 281 F. Supp. 3d 1284, 1294-95 (S.D. Fla. 2017), the district court adopted the magistrate judge's finding that, because the defendant could receive another two years in prison if found guilty, the alleged

violation of supervised release at issue was "serious." The court in *Rodriguez* also looked to the length of the potential additional period of supervised release to determine the seriousness of the alleged violation of supervised release and to the statutory maximum penalty that could have been imposed on the defendant's underlying conviction. 281 F. Supp. 3d at 1295.

In *United States v. Morris*, 2005 WL 348306, at *3 (D. Del. Feb. 8, 2005), the district court also looked to the seriousness of the underlying criminal offense, armed bank robbery, in determining that an important governmental interest was at stake in restoring the defendant to competency to answer a charge of violation of his term of supervised release.

In *United States v. Kourey*, 276 F. Supp. 2d 580, 585 (S.D. W.Va. 2003), a district court found that, based on the fact that the defendant was charged with violating the terms and conditions of a period of supervised release imposed for the commission of a misdemeanor, the defendant was not facing "serious criminal charges." In *Kourey*, Warden Beeler of FMC Butner sought court approval to forcibly medicate a defendant charged with violating the terms and conditions of a period of supervised release imposed on a conviction for violating 18 U.S.C. § 1361 for breaking a glass door at a United States Courthouse. *See* 276 F. Supp. 2d at 581-83. The court found that the forcible administration of medication to restore competency was inappropriate at that time, in that the defendant had not been remanded to the custody of the Attorney General for treatment, but rather merely for an evaluation regarding competency. *See Kourey*, 276 F. Supp. 2d at 585.

In *United States v. Armstrong*, 2014 WL 1257020 (W.D. Ky. Mar. 26, 2014), the district court held that a Grade C violation based on an allegation that the defendant had absconded from supervised release was not a serious enough charge to justify forcible medication to restore the defendant to competency.

In *United States v. Jones*, 2016 WL 3962776 (D. Conn. July 21, 2016), the district court found that the defendant's alleged violations of his term of supervised release were not serious enough to justify forcible medication to restore him to competency. In *Jones*, the defendant's alleged violations were based on conduct such as sleeping overnight in a train station. *See* 2016 WL 3962776, at *2.

The Government has argued that it does have an important governmental interest in restoring Evans to competency to prosecute the supervised release violation allegation against him. In particular, the Government argues that Evans was originally convicted of a serious crime, assault with a dangerous weapon with intent to do bodily harm and received a lengthy prison sentence. If his supervised release is revoked, the Government argues that Evans could receive up to the statutory maximum of 24 months' imprisonment. The Government also urged the court to consider that Evans has a lengthy criminal record, placing him for Sentencing Guidelines purposes in a Category V. The Government also argued that the court should consider that the supervised release violation alleges that Evans did not report to begin his term of supervised release and that the Government has an interest in prosecuting defendants for violation of supervised release as a deterrent to prevent other defendants from violating their conditions of supervised release. In opposition to the Government, Evans's counsel argued that, because Evans has been held in custody longer than any sentence that would likely be

imposed if found to have violated his supervised release as alleged, the Government's interest in prosecuting him is not sufficiently important to justify forced medication.

The Fourth Circuit in *United States v. Evans*, 404 F.3d 227, 237 (4th Cir. 2005), has directed courts to consider the maximum penalty authorized by statute and, also, a defendant's probable sentencing guidelines range, to help assess an offense's seriousness. In this case, the defendant's sentencing guideline range would be 7 to 13 months' imprisonment, with a statutory maximum term of 24 months' imprisonment. To date, the defendant has been held in custody since his arrest on October 13, 2017 – a period of approximately 12 months. The Fourth Circuit also has held that, even if the defendant would serve no further period of incarceration upon conviction, the fact that he may be placed on another term of supervised release, may be considered by the court in assessing the importance of the Government's interest. *See United States v. Bush*, 585 F.3d 806, 815 (4th Cir. 2009).

In the *Baugh* and *Rodriguez* cases, the district court held that, when considering whether to order forcible medication to restore a defendant to competency to answer an alleged supervised release violation, the court should also look at the seriousness of the defendant's underlying conviction imposing the term of supervised release. *See Baugh*, 776 F. Supp. 2d at 180; *Rodriguez*, 281 F. Supp. 3d at 1295.

In this case, Evans was convicted of a serious crime, assault with a dangerous weapon with intent to do bodily harm, for which Evans was sentenced to

120 months in prison to be followed by three years' supervised release. "The government has an important interest in seeing that aspect of [Evans's] sentence implemented before he is released to society to function on his own. In fact, the successful completion of supervised release is of great significance in the scheme of punishment in effect in the federal courts." *Baugh*, 776 F. Supp. 2d at 180.

The court also must consider whether any special circumstances exist to mitigate the government's interest in prosecution. *See United States v. Sheikh*, 651 F. App'x 168, 170, 174 (4th Cir. 2016) (citing *Sell*, 539 U.S. at 180-81). For instance, the fact that a defendant may be held under a civil commitment if not restored to competency may weigh against the Government's interest in prosecution. *See Sheikh*, 651 F. App'x at 172. Here, however, the court has no evidence before it as to whether Evans is likely to meet the criteria for civil commitment if he is not involuntarily medicated.

Based on the above, I find that there is an important governmental interest at stake in pursuing the prosecution of Evans on this charge of violating his supervised release. While the charge before the court is a violation of supervised release, this period of supervised release was imposed upon Evans's conviction for a serious, violent crime. Evans has a lengthy criminal history. Evans also suffers from serious psychiatric problems, including schizophrenia. Here, the alleged violation was not a mere technical violation of conditions of supervised release. To the contrary, it is alleged that Evans did not report as required to begin his supervised release. With his criminal and psychiatric history, the Government has great interest in ensuring that Evans makes a successful re-entry into society after imprisonment. If the Government cannot prosecute Evans for failing to submit to

supervision, it cannot enforce the court-ordered period of supervision that was included in his sentence.

*III.*

Based on the above, I find that the Government has demonstrated that it has an important governmental interest in prosecuting Evans for violation of his term of supervised release. Based on this finding, the court will schedule an evidentiary hearing to determine if the motion for forcible medication should be granted pursuant to *Sell*, 539 U.S. 166. The court also will order Bureau of Prisons' personnel to provide an addendum to their recent report, setting forth their prescribed treatment plan to restore the defendant to competency.

**ENTERED:** October 5, 2018.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE